**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ANDRE JOHNSON,

Plaintiff,

- v -

Civ. No. 9:05-CV-376 (TJM/RFT)

RICHARD DOLING, Hearing Officer, Great Meadow Correctional Facility; ROBERT MURPHY, Acting Director, Special Housing Unit,

Defendants.

**APPEARANCES:** **OF COUNSEL:**

ANDRE JOHNSON
Plaintiff, *Pro Se*
94-A-3763
Southport Correctional Facility
P.O. Box 2000
Pine City, N.Y. 14871

HON. ANDREW CUOMO
Attorney General for the State of New York
Attorney for Defendants Doling and Murphy
The Capitol
Albany, N.Y. 12224

JEFFREY P. MANS, ESQ.
Assistant Attorney General

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

*Pro se* Plaintiff Andre Johnson brings this civil action, pursuant to 42 U.S.C. § 1983, alleging Defendants Doling and Murphy denied him due process rights in a Disciplinary Hearing in violation of the Fourteenth Amendment. Dkt. No. 1, Compl., Facts at ¶¶ 1-35 & Cause of Action at ¶¶ 36-47. Specifically, Plaintiff alleges Defendants violated his due process rights by denying him the right to present a defense, call witnesses, be present, receive a written disposition and statement of the

evidence relied upon, and receive a fair and impartial hearing. Compl. at ¶ 39. Defendants now bring a Motion for Summary Judgment. Dkt. No. 34. Plaintiff opposes the Motion. Dkt. No. 35. For the following reasons, it is recommended that the Motion for Summary Judgment be **granted**.

## I. FACTS

During all relevant times pertaining to this action, Plaintiff was incarcerated at Great Meadow Correctional Facility. Dkt. No. 34, Defs' 7.1 Statement at ¶ 2.[1] Plaintiff was served with an Inmate Misbehavior Report, dated March 17, 2002, in which he was charged with possession of a weapon, assault, fighting, and threat of violence. *Id.* at ¶ 3. Prior to the Disciplinary Hearing, Plaintiff was provided an assistant of his choice with whom he met, received all requested documents, and requested one inmate witness, Angulo. *Id.* at ¶ 4.

Defendant Officer Doling commenced the Hearing on March 21, 2002, advising Plaintiff of the procedure and his rights. *Id.* at ¶ 7. Doling then read the Inmate Misbehavior Report into the record and asked Plaintiff to enter a plea, to which Plaintiff entered a plea of not guilty. *Id.* at ¶¶ 7-8. During the Hearing, Plaintiff objected to the evidence tag number identified in the Misbehavior Report (#8621), which was not the same evidence tag number on the physical weapon (#8629). *Id.* at ¶ 9. Doling dismissed the objection, indicating that because the weapon marked #8629 had the same physical description as the weapon in the Misbehavior Report, he believed the mixup in numbers was the result of a typographical error. Dkt. No. 34, Jeffrey P. Mans, Asst. Att'y Gen., Affirm., dated Jan. 10, 2007, Ex. A-10, Hr'g Tr. at p. 2.

Correction Officer Young authored the Misbehavior Report which formed the basis for

[1] When the Plaintiff has not objected to a particular statement of fact proffered in the Defendants' 7.1 Statement, we will not cite to both 7.1 Statements, only to the Defendants'. *See* N.D.N.Y.L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.") (emphasis in original).

the charges against Plaintiff. Mans Affirm., No. 34, Ex. A-3, Inmate Misbehavior Report, dated Mar. 17, 2002. In the Report, Young stated he saw Plaintiff swing at and stab another inmate, Angulo, with a weapon about eight inches long and sharpened to a point with a piece of bed sheet wrapped around it as a handle. *Id.* Young also stated he recovered the weapon after Plaintiff threw it away as he was falling to the floor. *Id.* The Misbehavior Report does not mention any other inmate besides Plaintiff and the victim, Angulo. Plaintiff objected that the Misbehavior Report should include other inmates involved in the incident pursuant to Departmental Regulation, codified at N.Y. COMP. CODES R. & REGS. ( NYCRR) tit. 7, § 251-3.1(c)(4), which states that "when more than one inmate was involved in an incident, the report should, to the extent practicable under the given circumstances, indicate the specific role played by each inmate." Hr'g Tr. at pp. 3-6. Because Young had not mentioned other inmates in the Report, Doling dismissed Plaintiff's objections to the Report as irrelevant. *Id*. at pp. 3-4.

An Unusual Incident Report (UIR), dated March 17, 2002, indicates that four inmates were involved in the altercation Young observed. Mans Affirm., Ex. A-6 at pp. 1-3, Unusual Incident Rep., dated Mar. 17, 2002 (stating "[O]fficer [Y]oung observed three inmates fighting with inmate Angulo"). Plaintiff attempted to introduce the UIR into evidence in order to call into question the accuracy of the Misbehavior Report, however, Doling denied said introduction for lack of relevancy because the Misbehavior Report alone constituted the formal charge against Plaintiffs under 7 NYCRR § 254.3, and because the UIR was not written by Young. Hr'g Tr. at pp. 3-5 & 10.

At Plaintiff's request, Officer Young and Inmate Ingram testified at the Hearing. Defs.' 7.1 Statement at ¶ 11. Young testified he observed Plaintiff and two other inmates attacking

Inmate Angulo, that Plaintiff attempted to stab Angulo with the shank he subsequently threw away as he slipped and fell to the floor, and that after he recovered the weapon he "screwed up" the tag number, creating the aforementioned tag number discrepancy.  Hr'g Tr. at pp. 6-10.

Plaintiff then called as witnesses Inmate Angulo and the other inmates named in the UIR, Temple and Ingram.  Hr'g Tr. at p. 5.  Angulo refused to testify in the case, stating in his refusal form that he didn't know Plaintiff.  Mans Affirm., Ex. A-9 at p. 4, Requested Inmate Refusal to Testify Form, dated Mar. 21, 2002.  Defendant Doling was satisfied that Angulo's refusal was fair, reasonable and not occasioned by any wrongdoing.  Hr'g Tr. at p. 13.  Doling called Officer Stemp in order to request Inmate Temple to testify, but Officer Stemp indicated Temple did not want to testify.  *Id.* at p. 18.  Officer Stemp did not know why Temple refused, nor did he know if Temple had been threatened or promised anything if he didn't testify.  *Id.*  Based upon that conversation, Doling found that Temple had voluntarily refused to testify.  *Id.* at p. 19.

Plaintiff also called as a witness Sergeant (Sgt.) Brown, who investigated the incident, and Lieutenant (Lt.) Armstrong, who received an interdepartmental communication from Officer Young indicating that Young recovered a different weapon from the scene of the altercation, a four-and-a-half inch long piece of sharpened metal wrapped with plastic food covering.  Hr'g Tr. at pp. 13-17; Mans Affirm., Ex. A-6 at p. 4, Ex. 5, Interdepartmental Commc'n, dated Mar. 17, 2002.  Doling refused to call these officers for lack of relevancy.  Hr'g Tr. at pp. 13-17.  In Sgt. Brown's case, Doling deemed his testimony irrelevant because he did not witness the incident nor write the Misbehavior Report.  *Id.*  Lt. Armstrong's testimony was deemed irrelevant because Doling saw no inconsistencies between the Interdepartmental Communication and the Misbehavior Report.  *Id.*

Doling excluded Plaintiff from the Hearing after Plaintiff allegedly exhibited threatening behavior and, in Doling's opinion, attempted to prolong the Hearing by calling irrelevant witnesses. Hr'g Tr. at pp. 19-20. Officer Doling stated:

> Upon asking Mr. Johnson to step out so I could arrange for further witnesses, Mr. Johnson became threatening and I had him removed from the hearing room because of his clear refusal to um, move this hearing along and his threatening manner. Mr. Johnson has been excluded from this hearing. I have decided to complete this hearing without him. It is clear that Mr. Johnson is making requests for witnesses who are not relevant or material to the issue has become very angry with hearing officer for refusing to uh, subject himself, the hearing officer refusal to subject himself to the_______ of the inmate and have become argumentative, threatening and otherwise uh, dangerous to the safety and security of the facility. The inmate has requested a number [of] witnesses most of whom have been dealt with by either hearing the testimony of or obtaining the refusal of the witnesses.

Hr'g Tr. at pp. 19-20.

Plaintiff denies exhibiting any threatening or obstructive behavior, and further asserts that Doling stopped the audio recorder while rudely dismissing him.[2] Pl.'s 7.1 Statement at ¶ 7. Doling continued the Hearing without Plaintiff and questioned Inmate Ingram, the final witness Plaintiff had requested prior to his removal. Hr'g Tr. at pp. 20-22. Doling found Plaintiff guilty of the charges and imposed a penalty of 730 days disciplinary confinement in the Special Housing Unit (SHU). *Id.* at p. 22. Doling made a statement of the evidence relied upon, and requested that Officer Catalfamo give copies of the Hearing Disposition along with an appeal form to Plaintiff within twenty-four hours. *Id.* at pp. 22-23. Plaintiff denies ever receiving these documents. Pl.'s 7.1 Statement at ¶ 7; Compl. at p. 2. However, Plaintiff did receive a copy of the audio tape of the Hearing and successfully requested an extension of time to appeal the

[2] Plaintiff asserts Doling told Officer Catafalmoto to "get this piece of shit out of here." Pl.'s 7.1 Statement at ¶ 7. There does appear to be a break in the transcript before Doling announces he has expelled Plaintiff. Hr'g Tr. at p. 19.

disposition. Mans. Affirm., Ex. A-11, Letter from Andre Johnson to Glenn S. Goord, dated Apr. 18, 2002 (stating "I received the hearing tape in SHU"); Mans. Aff., Ex A-13, Letter from Deputy Comm'r Lucien J. Leclaire, Jr. to Andre Johnson, dated Apr. 29, 2002 (granting Johnson's request for an extension to supplement his appeal).

Plaintiff appealed Doling's Tier III determination. Defs.' 7.1 Statement at ¶ 21. Defendant Robert Murphy, Acting Director of Special Housing and Inmate Discipline, modified the Tier III disciplinary determination by reducing the penalty imposed from 730 days to 540 days in SHU. *Id*. at ¶ 22. Subsequently, by determination dated June 23, 2002, Donald Selsky, Director of Special Housing and Inmate Discipline, administratively reversed the Tier III disciplinary determination, although Plaintiff had already served the entirety of the modified sanction. Defs.' 7.1 Statement at ¶ 26; Pl.'s 7.1 Statement at ¶ 12.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be

deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*,

14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

**B. Due Process Claims Against Defendant Doling**

In order to state a procedural due process claim pursuant to the Fourteenth Amendment, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Such interests are derived from the Fourteenth Amendment Due Process Clause itself or from state statute or regulations. *Id*.

The Supreme Court has narrowly circumscribed the scope of liberty interests emanating from the Due Process Clause to protect "no more than the 'most basic liberty interests in prisoners.'" *Id.* (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)). Furthermore, "changes in the conditions of confinement having a substantial adverse impact on the prisoner are not alone sufficient to invoke the protections of the Due Process Clause '[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him.'" *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)).

However, when a prisoner is subjected to conditions that are "unexpected," *Sandin v. Conner*, 515 U.S. 472, 484 (1995), and "qualitatively different from the punishment characteristically suffered by a person convicted of crime," the Due Process Clause itself confers a liberty interest. *Vitek v. Jones*, 445 U.S. at 493 (holding an involuntary transfer to a state mental hospital implicated a liberty interest protected by the Due Process Clause); *see also*,

*Washington v. Harper*, 494 U.S. 210 (1990) (finding the Due Process Clause provides a liberty interest in being protected from the involuntary administration of psychotropic drugs).

In the case at bar, Plaintiff's disciplinary confinement in SHU does not constitute an "unexpected" change in condition, nor did those conditions exceed the sentence imposed upon him. *See Dawes v. Dibiase*, 1997 WL 376043, at *4 (N.D.N.Y. July 3, 1997) (citing *Washington v. Harper* & *Vitek v. Jones* for the proposition that the Due Process Clause will apply by its own force only for deprivations much more severe than solitary confinement for a year). Therefore, Plaintiff does not have a liberty interest in remaining free from SHU confinement emanating from the Due Process Clause itself.

State statutes and regulations may also confer liberty interests to prisoners. *Arce v. Walker*, 139 F.3d at 334 (citing *Kentucky Dep't of Corr*. v. *Thompson,* 490 U.S. at 460). The Supreme Court held in *Sandin v. Conner* that state created liberty interests shall be limited to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 484. Thus, a prisoner asserting a denial of due process as a result of segregated confinement or loss of privileges must (1) make a threshold showing that an atypical and significant hardship was imposed upon him, and (2) establish that the "state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

While the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard, *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999), it has made clear that confinement in SHU for a period of one year constitutes

atypical and significant restraint on inmates, deserving due process protections, *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (stating that confinement in SHU exceeding 305 days was atypical); *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (finding 305 days of SHU confinement atypical).

Thus, while Plaintiff cannot claim a liberty interest emanating from the Due Process Clause itself, he has by virtue of being confined in SHU for over a year passed the *Sandin* threshold for constitutional protection of a state-created liberty interest. Because New York State has created by statute or regulation a liberty interest in remaining free from segregated confinement, Plaintiff has stated a valid due process claim based on a constitutionally protected, state-created liberty interest. *Sher v. Coughlin*, 739 F.2d 77, 81 (2d. Cir. 1984); *Alvarez v. Coughlin*, 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001) (holding *Sandin* does not affect the validity of prior decisions holding New York State Regulations create a protected liberty interest in remaining free from disciplinary segregation).

Having made a threshold showing of atypical and significant confinement, we must consider whether Plaintiff, prior to his confinement, was afforded the minimum requirements of due process. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). A prisoner placed in administrative segregation must be provided (1) advanced written notice of the charges against him at least twenty-four hours prior to the hearing; (2) the opportunity to appear at the hearing, call witnesses, and present rebuttal evidence; and (3) a written statement as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 564-66; *see also Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986); *Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir. 2001) (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).

**1. Notice**

"Notice" should be something more than a mere formality. *Benitez v. Wolff*, 985 F.2d 662, 665 (2d Cir. 1993). "The effect of the notice should be to compel 'the charging officer to be [sufficiently] specific as to the misconduct with which the inmate is charged' to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges and not be made to explain away vague charges set out in a misbehavior report." *Taylor v. Rodriguez*, 238 F.3d at 192-93 (quoting *McKinnon v. Patterson*, 568 F.2d 930, 940 n.11 (2d Cir. 1977)) (alteration in original).

In this case, Plaintiff was served with an Inmate Misbehavior Report, dated March 17, 2002, in which he was charged by Officer Young with possession of a weapon, assault, fighting, and threat of violence. Mans Affirm., Ex. A-3, Inmate Misbehavior Rep. Johnson acknowledged receipt of the Misbehavior Report by signing the Hearing Record Sheet and does not contest receipt of such Report. Mas Affirm. Ex. A-9 at p. 2, Hr'g Record Sheet.

We find that Plaintiff was provided sufficient notice to fulfill the requirements of due process.

**2. Hearing**

A prisoner must be afforded the opportunity to appear at the Disciplinary Hearing, to call witnesses, and to present rebuttal evidence. *Wolff v. McDonnell*, 418 U.S. at 556. "Although the hearing requirement for placement in administrative segregation may be met by an 'informal, nonadversary' proceeding, *Hewitt* [*v. Helms*,] 459 U.S. at 476, it is a bedrock requirement of due process that such hearing be held 'at a meaningful time and in a meaningful manner,' *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)." *Taylor v. Rodriguez*, 238 F.3d at 193.

Plaintiff was provided an assistant of his choice, received all requested documents, and requested Inmates Angulo and Temple to testify as his only inmate witnesses. At the Hearing presided by Defendant Officer Doling on March 21, 2002, Plaintiff was advised of the procedure and of his rights and was read the charges against him as reflected in the Misbehavior Report. Hr'g Tr. at pp. 1-2. Plaintiff claims Doling violated his due process rights at various times during the course of the Hearing. Compl. at ¶ 39.

**a. Witnesses**

First, Plaintiff asserts he was denied the opportunity to call witnesses as part of his defense. *Id.* An inmate's right to call witnesses is not the same as a defendant in a criminal trial, but rather, is qualified by the circumstances of prison life. *Wolff v. McDonnell*, 418 U.S. at 566-67. The Supreme Court has stated that disciplinary hearing officers must have the discretion to deny witnesses, noting that valid bases for the denial of witnesses would include irrelevance, lack of necessity, and other hazards particular to each case. *Id.* (noting that the right to call witnesses must be balanced against legitimate penological interests).

Plaintiff attempted to call as witnesses Inmates Angulo (the victim) and Temple (mentioned in the Unusual Incident Report). Angulo refused to testify, stating in his signed refusal form he didn't know Plaintiff. Mans Affirm., Ex A-9 at p.4, Requested Inmate Witness Refusal to Testify Form, dated Mar. 21, 2002. Inmate Temple, without offering any reasons, also refused to testify as recounted by Officer Stemp. Hr'g Tr. at p. 18.

A failure to summon the testimony of a witness who has refused to testify, in the absence of evidence that the refusal was linked to intimidation on the part of prison officials, does not violate due process because calling a witness who refuses to speak upon questioning would be

R F T

futile. *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993); *see also Rossi v. Goord*, 2006 WL 2811505, at *14 (N.D.N.Y. Sept. 28, 2006). The hearing officer does not have to conduct an independent investigation before accepting an inmates-witness's refusal to testify. *Dumpson v. Rourke*, 1997 WL 610652, at *1 (N.D.N.Y. Sept. 28, 2006) (citing *Greene v. Coughlin*, 1995 WL 60020, at *14 (S.D.N.Y. Feb. 10, 1995). In this case, the record provides no evidence nor intimation that either refusal was made because of intimidation. The fact Temple did not sign a refusal form did not even amount to a violation of any New York State Regulation, let alone a constitutional due process violation. *See*, 7 N.Y. COMP. CODES R. & REGS. tit. 7, § 253.5. Therefore, Officer Doling's refusal to compel these witnesses' appearance does not constitute a due process violation.

Plaintiff also attempted to call as witnesses Sgt. Brown, who investigated the incident, and Lt. Armstrong, who received an interdepartmental communication about the incident from Officer Young. Defendant Officer Doling denied calling them for lack of relevancy. Hr'g Tr. at pp. 13-17. Doling ruled that neither Lt. Armstrong nor Sgt. Brown personally witnessed the incident, and thus could not offer any relevant information. Irrelevancy is a valid grounds for the denial of a witness. *Wolff v. McDonnell*, 418 U.S. at 566-67. Although Plaintiff correctly points out that the Misbehavior Report did not include information pertaining to other inmates who were allegedly involved in the incident, possibly in contravention of the protocol laid out in Departmental Regulation § 251-3.1, such an omission does not change the charges against him nor the evidence relevant to that charge. Violation of state law alone is generally insufficient to establish a constitutional violation. *See Soto v. Walker*, 33 F.3d 169, 173 (2d Cir. 1993). Additionally, the UIR, which identified other inmate participants, is congruent with Young's

Misbehavior Report in that both state that Young observed Johnson stabbing and slashing Angulo with an eight inch sharpened metal shank with a cloth handle. In determining that their testimony was irrelevant, Doling's refusal to call Brown and Armstrong did not violate due process.

Plaintiff was allowed to call and question Officer Young as a witness. Hr'g Tr. at pp. 6-10. Young affirmed the charges described in his Misbehavior Report. *Id*. Doling also called Inmate Ingram and examined him after Plaintiff was removed from the Hearing.[3] *Id*. at pp. 20-22. For the reasons stated above, it is therefore recommended that summary judgment be **granted** as to this claim.

**b. Ejection from Hearing**

Second, Plaintiff asserts Doling deprived him of due process when he evicted him from the Hearing and continued it in his absence. Compl. at ¶ 39. Defendants argue due process does not entail the right to be physically present at a disciplinary hearing. Dkt. No. 34-24, Defs' Mem. of Law, at p. 17 (citing *Bogle v. Murphy*, 2003 WL 22384792 (W.D.N.Y. Sept. 9, 2003) for the proposition that violations of New York State Regulations do not necessarily constitute constitutional due process violations, and *Francis v. Coughlin*, 891 F.2d 43, 48 (2d Cir. 1989) for the Second Circuit's determination that "[p]rison inmates do not possess a constitutional right to be present during the testimony of witnesses during a disciplinary proceeding"). We recently recognized in *Holloway v. Selsky* the existence of conflicting Second Circuit opinions regarding whether prisoners have a right to be present at disciplinary hearings under the Due Process Clause. 2007 WL 433375, at *7 (N.D.N.Y. Feb. 6, 2007). In that case, we noted that in *Francis*

[3] We consider Plaintiff's ejection and the continuation of the Hearing in his absence below.

*v. Coughlin*, 891 F.2d 43, 48 (2d Cir. 1989), the Second Circuit declared nonexistent the right of an inmate to be present at a disciplinary hearing, while in two subsequent cases, the Second Circuit affirmed a limited right to be present during disciplinary hearings: in *Young v. Hoffman*, 970 F.2d 1154 (2d Cir. 1992), the Second Circuit stated that "[t]he Due Process Clause provides inmates with several protective procedures that they may expect at disciplinary hearings, *including the opportunity to appear at the hearing* and to call witnesses" (emphasis added) and in *Chavis v. Zodlow*, 2005 WL 834646, at *3-4 (2d Cir. 2005), it stated that prisoners have a "limited right to be present" during disciplinary hearings. In *Holloway*, we declined to address this constitutional issue because the Plaintiff failed to make the threshold showing of a constitutionally protected liberty interest under the atypical and significant standard. *Holloway v. Selsky*, 2007 WL 433375, at *7. In the case at bar, no such roadblock prevents our consideration of this constitutional issue.

The Second Circuit has held that the limited right to call witnesses, present evidence, and comment on the charges brought are facially valid constitutional claims. *Sims v. Artuz*, 230 F.3d 14, 24 (2d Cir. 2000) (citing *Wolff v. McDonnell*, 418 U.S. at 555-72). We find implicit in the Supreme Court's decision in *Wolff* the limited right to be physically present at disciplinary hearings in order to exercise the aforementioned basic due process rights. *Chavis v. Zodlow*, 2005 WL 834646 at *3-4 (stating that the Supreme Court in *Wolff v. McDonnell* "acknowledg[ed] an inmate's limited right to be present during his disciplinary hearing"). While this right must necessarily be limited by penological interests, the *per se* denial of such right would undermine the requirement that disciplinary hearings be held "at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also Wolff v.*

*McDonnell*, 418 U.S. at 566 (stating "we must balance the inmate's interest . . . against the needs of the prison, and some amount of flexibility and accommodation is required").

However, because we recognize that neither the Supreme Court nor the Second Circuit has clearly articulated the right of prisoners to be present at disciplinary hearings, Defendants are entitled to qualified immunity. *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 359 (2d Cir. 2002). Qualified immunity will shield "government officials from liability for civil damages when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 359 (2d Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Mollica v. Volker*, 229 F.3d 366, 370 (2d Cir. 2000). Violation of a duty under state law does not defeat qualified immunity because there must be a clearly established *federal* right on which the claim for relief is based. *Elder v. Holloway*, 510 U.S. 510, 515-16 (1994) (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984)). In order for the constitutional right to be clearly established, three elements must be met: "1) . . . [that] the right in question [be] defined with reasonable specificity; 2) [that] the decisional law of the Supreme Court and applicable circuit court support the existence of the right in question; and 3) [that] under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Mollica v. Volker*, 229 F.3d at 371 (internal quotation marks and citations omitted) (alterations in original).

Because neither the Supreme Court nor the Second Circuit has clearly established the right of prisoners to be present at a disciplinary hearing, qualified immunity applies and it is recommended that summary judgment on this claim be **granted**.

**c. Right to Present a Defense**

Plaintiff asserts Doling denied him the opportunity to present a defense. Compl. at ¶ 39. Specifically, Plaintiff objects to Doling's determination that the discrepancy of the numbered label on the evidence bag was due to a typographical error, to his refusal to call certain witnesses, and to the Misbehavior Report, which failed to include a description of the participation of three other inmates who were named in the UIR. Pl.'s Mem. of Law at pp. 15-20. These objections are without merit. As discussed above, Doling acted within his authority when he declined to call witnesses for lack of relevancy. *See supra* Part II.B.2.a at pp. 12-14. Further, the charges brought against Plaintiff in the Misbehavior Report are not contradicted by the UIR, and are in fact affirmed by it. *Compare* Inmate Misbehavior Report (stating Plaintiff was "swinging and stabbing inmate Angulo") *with* Unusual Incident Report (stating Plaintiff was "using a metal shank stabbing and slashing at Angulo"). Finally, Doling's determination that a typographical error was the cause of the mislabeled evidence bag, affirmed by Officer Young's testimony, was not unreasonable. Hr'g Tr. at pp. 6-9. And, as previously discussed with respect to Plaintiff's dismissal from the hearing, qualified immunity applies, and it is therefore recommended that summary judgment on this claim be **granted**.

**d. Fair and Impartial Hearing**

Plaintiff claims he received an unfair and partial hearing before Hearing Officer Doling. Compl. at ¶ 39. An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer who does not prejudge the evidence. *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). But, it has been held that "prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Id*. at 259 (citing *Russell v. Selsky*, 35 F.3d 55, 60 (2d Cir. 1994) and *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989).

The Hearing Transcript reveals a contentious proceeding characterized by frequent interruptions and heated exchanges between Plaintiff and Doling. *See generally* Hr'g Tr. Notwithstanding, until his dismissal from the proceeding, Plaintiff was provided the opportunity to testify, call and question witnesses, and raise objections on which Doling ruled and explained his reasoning to Plaintiff. *Id.* Disagreement with rulings made by a hearing officer does not constitute bias. *Cf. Dumpson v. Rourke*, 1997 WL 610652, at *6 (N.D.N.Y. Sept. 26, 1997) (stating "[t]he fact that the hearing officer did not decide in the plaintiff's favor does not make him biased in the constitutional sense"). We find no genuine issues of material fact concerning Doling's impartiality and therefore it is recommended that summary judgment be **granted** on this claim.

**3. Written Statement of the Evidence Relied Upon**

Plaintiff claims he did not receive a written disposition of the Disciplinary Hearing or statement of the evidence relied upon. Compl. at ¶ 39. Prisoners are entitled to a "written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff v. McDonnell*, 418 U.S. at 563. Provision of a written disposition is a mechanism that ensures the inmate protection against "collateral consequences based on a misunderstanding of the nature of the original proceeding. . . . Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others." *Id.* at 565.

After declaring Plaintiff guilty of the charges brought, Doling imposed a penalty of 730 days in SHU with attendant loss of privileges, annunciated a statement of the evidence which was relied upon, and directed Officer Catalfamo to deliver the Hearing Disposition together with

an appeal form to Plaintiff within 24 hours. Hr'g Tr. at p. 22. Defendants provide an Interdepartmental Communication from Officer Catalfamo, dated March 29, 2002, wherein he asserts he delivered a copy of the disposition form to Plaintiff and also informed Plaintiff of his right to appeal the disposition within thirty days. Mans Affirm., Ex. A-9 at p. 6, Interdepartmental Commc'n, dated Mar. 29, 2002. Plaintiff asserts those documents were never delivered to him as Doling directed. Pl.'s Mem. of Law at pp. 20-21. However, Plaintiff did receive a copy of the disposition within a month after the Hearing, and was able to file an appeal on which he eventually prevailed. Mans Affirm., Ex. A, Dep. of Andre Johnson, dated Sept. 12, 2006, at pp. 47-51 (stating he received them sometime in April 2002); *see also* Mans Affirm. Exs. a-11 & A-12 (letters from Plaintiff requesting extensions of time to file an appeal and noting he received an audio tape of the Hearing along with a cassette player). Any potential constitutional violation was therefore cured because the delay in no way prejudiced Plaintiff, as evidenced by the fact that he filed an appeal and was ultimately successful, and therefore it is recommended that summary judgement be **granted** on this claim.

**C. Due Process Claims Against Defendant Murphy**

Plaintiff claims Murphy violated his due process rights by failing to remedy the alleged constitutional violations he suffered. Compl. at ¶¶ 40-41. Plaintiff does not allege that Defendant Murphy was personally involved in any wrongdoing, and thus his theory of liability rests solely on Murphy's supervisory status. Because we find that Defendant Doling did not violate any clearly established constitutional rights, Defendant Murphy cannot be held liable on any grounds. *See supra* Part B, Due Process Claims Against Defendant Doling. It is therefore recommended that summary judgment be **granted** as to the claims against Murphy.

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 34) be **GRANTED** and the Complaint (Dkt. No. 1) be **DISMISSED** against all Defendants, and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date: September 17, 2007
Albany, N.Y.

RANDOLPH F. TREECE
United States Magistrate Judge